UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 08-80407-CIV-HURLEY/HOPKINS

LAWRENCE A. SYKES,

    Plaintiff,

vs.

M/V OSPREY, Official No. 908367,
her engines, tackle, rigging, etc., et al.,

    Defendants.
_____/



## MEMORANDUM OPINION CONTAINING
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS CAUSE** is before the court following the trial in this matter held on April 6, 2009. Having reviewed the evidence admitted at trial and considered the arguments of counsel,[1] the court now makes the following findings of fact and conclusions of law:

### INTRODUCTION

1.    Plaintiff Lawrence A. Sykes is a resident of Florida.

2.    Defendant Osprey 55, LLC is a limited liability company organized under the laws of Florida and having its principal place of business in the Southern District of Florida. Michael Jeffrey is the managing member of Osprey 55, LLC.

---

[1] Defendants did not appear at trial. Neither the vessel nor the limited liability company are represented by counsel. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (restating general rule that corporations may appear only through counsel); *see also U.S. v. Hagerman*, 545 F.3d 579, 581-82 (7th Cir. 2008); *Lattanzio v. Cmte. on Massage Therapy Accreditation*, 481 F.3d 137, 139-40 (2d Cir. 2007) (both applying rule against *pro se* litigation by corporate entities to single-member limited liability companies).

    In any event, Mr. Jeffrey, managing member of Osprey 55, LLC and the Osprey's beneficial owner, did not himself appear at trial. The court thus received only evidence and argument offered by the plaintiff.

3. Osprey 55 is the owner of defendant the M/V Osprey, Official No. 908367. The Osprey is a 55-foot Hatteras convertible, built in 1982.

4. This is an action to foreclose a mortgage on the Osprey. The court has jurisdiction over this matter pursuant to 46 U.S.C. § 31325(c). The court further has personal jurisdiction over Osprey 55, LLC and *in rem* jurisdiction over the Osprey.

### FINDINGS OF FACT

5. In December 2005, Michael Jeffrey held an option to purchase the M/V Osprey, and wanted to exercise it. He approached plaintiff Sykes and asked him if he would be interested in providing a loan. Jeffrey explained to Sykes that he anticipated receiving funds from other sources in the near future, but needed a bridge loan in order to exercise his option to purchase the Osprey before expiration.

6. Sykes and Jeffrey agreed that Sykes would lend Jeffrey's company, Osprey 55, LLC, $136,500. The loan was to be repaid in a single lump sum of $148,785 six months after the date of the loan, representing an 18% *per annum* interest rate. These terms were set forth in the promissory note executed by Osprey 55 in favor of Sykes. *See* Pl.'s Ex. 1.

7. The $136,500 loan was funded in three parts: a bank check in the amount of $109,000; a wire transfer in the amount of $24,785; and a check made payable to cash in the amount of $2,715. *See* Pl.'s Exs. 3, 4, 5. These funds were made available to Jeffrey and his associated entities on March 7, 2006; thus, Osprey 55 was to repay the loan on September 7, 2006.

8. The loan was secured by both a first ship's mortgage on the Osprey and a second mortgage on a warehouse in Pompano Beach, Florida owned by Jeffrey's wife, Constance Kane. *See* Pl.'s Exs. 2, 12, 13.

9. As the repayment date approached, Jeffrey advised Sykes that he planned to repay the

2

loan with funds from the sale of the Pompano Beach warehouse. Jeffrey asked Sykes to release his second mortgage on the warehouse to permit the sale to go forward.

10. At the closing for the sale of the warehouse on September 14, 2006, Sykes signed a satisfaction of his second mortgage on the warehouse. It was the intention of all parties, including both Sykes and Jeffrey, that Sykes release only his second mortgage on the warehouse, and that Sykes' first mortgage on the Osprey remain unaffected. *See* Pl.'s Ex. 8.

11. The sale of the warehouse produced only $130,000, which were transferred to Sykes. Thus, $18,785 remained outstanding on the loan.

12. Between January 2007 and January 2008, Jeffrey made periodic payments totaling $7,700. Jeffrey sent Sykes correspondence suggesting that he did not plan to make any further payments.

13. Sykes filed this action in April 2008.

### CONCLUSIONS OF LAW

14. Sykes holds a valid preferred ship mortgage on the M/V Osprey.

15. Osprey 55, LLC is in default pursuant to the terms of the promissory note and preferred ship mortgage.

16. There remains outstanding a balance owed to Sykes in the sum of $12,035.02 as of April 15, 2008.

17. The satisfaction of mortgage signed by Sykes on September 14, 2006, *see* Pl.'s Ex. 7, released only Sykes' second mortgage on the Pompano Beach warehouse. It did not in any way affect Sykes' preferred ship mortgage on the Osprey.[2]

---

[2] In earlier proceedings, Jeffrey argued that the satisfaction of mortgage released the preferred ship mortgage on the Osprey, as well as the mortgage on the warehouse. Jeffrey's argument was based on the language of the satisfaction of mortgage, which says that Sykes "hereby acknowledges full payment and satisfaction of said note and mortgage deed, and surrenders the same as canceled . . . ."

3

18. Sykes is therefore entitled to judgment against Osprey 55, LLC and the Osprey, in the amount of $14,147.91. This consists of the $12,035.02 owed as of April 15, 2008, plus interest on that amount calculated at 18% *per annum* as provided in the promissory note, or $5.94 *per diem*, for the 356 days elapsed between April 15, 2008 and April 6, 2009.

19. The court will therefore order that the Osprey be sold by U.S. Marshal's sale in order to satisfy the judgment, and that Sykes be permitted to bid the amount of his judgment at the Marshal's sale.

20. The court reserves jurisdiction to award attorneys' fees, if appropriate.

### CONCLUSION

21. For the reasons given above, the court finds that judgment is due to be entered in favor of plaintiff Lawrence A. Sykes

22. Pursuant to Fed. R. Civ. P. 58(a), the court will enter final judgment by separate order.

---

Pl.'s Ex. 7. Although many other documents reflect the intent of all parties that the satisfaction release only the mortgage on the warehouse, Jeffrey argued that the court could not consider these documents because of the parol evidence rule.

The parol evidence rule generally bars a court from considering extrinsic evidence to alter the plain meaning of a clear and unambiguous term in a contract. *See Jenkins v. Eckerd Corp.*, 913 So.2d 43, 52 (Fla. 1st DCA 2005). But the parol evidence rule does not apply if the meaning of the contractual language is ambiguous. *See Madsen, Sapp, Mena, Rodriguez & Co., P.A. v. Palm Beach Polo Holdings, Inc.*, 899 So.2d 435, 436 (Fla. 4th DCA 2005); *In re Estate of Barry*, 689 So.2d 1186, 1187-88 (Fla. 4th DCA 1997).

There is ambiguity here because although the satisfaction of mortgage refers to "full payment and satisfaction of said note and mortgage deed," the attached sheet purporting to describe the satisfied mortgage lists only the mortgage on the warehouse. Thus the court may consider external evidence to determine which mortgage(s) were declared satisfied by that document.

That external evidence confirms that both parties intended the satisfaction of mortgage to release only the mortgage on the warehouse. For example, in a letter to Sykes dated October 10, 2006, Jeffrey himself acknowledged that Sykes maintained a mortgage on the Osprey. He wrote: "You still have the First Preferred Ship's Mortgage on the Osprey for the full amount of $148K plus, of which you have been paid $130K." Pl.'s Ex. 8.

4

Findings of Fact and Conclusions of Law
Sykes v. M/V Osprey et al.
Case No. 08-80407-CIV-HURLEY/HOPKINS

23. There being nothing further for the court to resolve in this matter, the Clerk is directed to **DENY** all pending motions as moot and mark this case as **CLOSED**.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this _7_ day of April, 2009.

Daniel T. K. Hurley
U.S. District Judge

*Copies provided to counsel of record*